IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBRA KELLUM,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN,[1] Acting
Commissioner of Social Security,

    *Defendant.*

Case No. 12-2655

**MEMORANDUM AND ORDER**

Plaintiff Debra Kellum seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. Kellum claims that the Commissioner's decision should be reversed because the Administrative Law Judge ("ALJ") erred by assigning no weight to the treating physician's opinion and by failing to properly account for her limitations in the hypothetical given to the vocational expert. Having reviewed the record, and as described below, the Court reverses the order of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Factual and Procedural Background

Debra Kellum was born on November 26, 1955. In Kellum's applications for disability insurance benefits and supplemental security income benefits, she alleged a disability beginning October 15, 2008. The agency denied Kellum's application initially and on reconsideration. Kellum then asked for a hearing before an administrative law judge.

An administrative hearing was held on November 1, 2010. At that hearing, Kellum testified about her medical conditions. A vocational expert testified that Kellum would be able to perform the requirements of representative medium occupations. An independent medical examiner also testified.

The ALJ issued his written opinion on December 27, 2010. He found that Kellum had not engaged in substantial gainful activity since October 15, 2008, and that she suffered from two impairments: chronic back pain and depression. The ALJ found that Kellum's mental impairment did not meet or medically equal the listed criteria. He found that Kellum did not have a marked restriction of activities of daily living; social functioning; and difficulties in maintaining concentration, persistence, or pace. Instead, the ALJ determined that she only had mild to moderate restrictions in these areas.

The ALJ's decision states that he considered reports from Kellum's treating physician but that he gave no weight to the treating physician's opinion. He also stated that he considered the consultative physician's report, and although the consultative physician opined that Kellum could not work, the ALJ did not interpret the opinion to mean that Kellum could not perform any work—merely the work she had previously performed. The ALJ also stated that his findings were based in "good part" on the independent medical examiner's testimony, who participated via telephone during the administrative hearing. After finding that Kellum did not have an

impairment equivalent to a listed impairment, the ALJ found that Kellum had the residual functioning capacity ("RFC") to perform medium work. The ALJ denied Kellum's request for benefits.

The ALJ found that Kellum was unable to perform any of her past relevant work, but a finding of "not disabled" was directed by the medical-vocational rules. Based on Kellum's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the local and national economy that Kellum could perform.

The Social Security Administration's Appeals Council granted Kellum's request for review. On September 7, 2012, the Appeals Council modified the ALJ's decision with regard to Kellum's physical limitations. The Appeals Council affirmed the ALJ's RFC findings as to Kellum's mental limitations. The Appeals Council's decision stands as the final decision. Because Kellum has exhausted all administrative remedies available, the Commissioner's decision is now final, and this Court has jurisdiction to review the decision.

## II.     Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[3] The Court is not to reweigh the evidence or substitute

---

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

its opinion for the ALJ.[4] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[5] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[6]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[7] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[8] The claimant bears the burden during the first four steps.[9]

In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and that she has a medically severe impairment or combination of impairments.[10] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, she is presumed to be disabled and entitled to benefits."[11] If, however, the claimant does not establish an impairment at step three, the process continues. The ALJ assesses the claimant's RFC, and at step four, the claimant must demonstrate that her impairment prevents

---

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

[5] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[6] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

[7] 42 U.S.C. § 1382c(3)(A); *see also id.* § 423(d)(1)(A).

[8] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[9] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Id.*

[11] *Id.*

her from performing her past work.[12] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[13] The RFC assessment is used to evaluate the claim at both steps four and five.[14]

### III. Analysis

Kellum argues that the ALJ erred in giving no weight to her treating physician's opinion and erred by failing to properly account for her limitations in the hypothetical given to the vocational expert. The Commissioner contends that the ALJ properly considered the medical opinion evidence and properly accounted for Kellum's limitations to the vocational expert.

**A. Treating Physician's Opinion**

Kellum argues that the ALJ erred by giving no weight to the opinion of her treating physician, Dr. Michael Smith. Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the notice of decision for the weight assigned to a treating physician's opinion.[15] Generally, an ALJ should "give more weight to opinions from [claimant's] treating sources."[16]

When reviewing the medical opinion of a treating physician, an ALJ must engage in a two-step inquiry, each step of which is analytically distinct.[17] First, the ALJ must decide whether to afford the opinion controlling weight. If a treating source's opinion about the nature and

---

[12] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[13] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(v).

[14] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

[15] 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[16] 20 C.F.R. § 404.1527(d)(2).

[17] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

severity of impairment is well-supported and is not inconsistent with the other substantial evidence in claimant's case record, the ALJ will give it controlling weight.[18] However, if the opinion is deficient in support or consistency with other evidence, it is not to be given controlling weight.[19]

But finding that the opinion is not entitled to controlling weight does not end the inquiry.[20] Such a finding does not mean that the opinion should be rejected.[21] Under the "treating physician rule," the Commissioner generally will give greater weight to the opinions of those who have treated the claimant than of those who have not.[22] A treating opinion is still entitled to deference even if it is not given controlling weight.[23] As a result, finding that a treating physician's opinion is deficient enough to be not given controlling weight only raises the question of how much weight to give the opinion, but it does not answer the question.[24]

In the second step, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."[25] The factors to be considered are:

---

[18] 20 C.F.R. § 404.1527(c)(2).

[19] *Krauser*, 638 F.3d at 1330.

[20] *Id*.

[21] *Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4).

[22] *Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005).

[23] *Id*.

[24] *Krauser*, 638 F.3d at 1330-31.

[25] *Id*. at 1330 (internal citation omitted).

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[26]

Remand is required if this is not done.[27] This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight."[28] If a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.[29] In other words, the ALJ's task is not to determine whether the treating physician's report outweighs the other physician's reports.

Kellum challenges the ALJ's finding that the opinion of Kellum's treating physician, Dr. Smith, was not entitled to any weight. Dr. Smith, who treated Kellum for several years, and saw her every two to three months, found that Kellum had marked limitations in the activities of daily living; social functioning; and ability to maintain concentration, persistence, or pace. Dr. Smith opined that Kellum's mental impairments met the criteria of Listing 12.04A. The ALJ, however, stated

> Although Dr. Smith has treated the claimant for some time, his opinion statement is out of line with his treatment records, [t]he prescribed medication regimen and

---

[26] 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927; *Krauser*, 638 F.3d at 1331.

[27] *Krauser*, 638 F.3d at 1330.

[28] *Id*. at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)).

[29] *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

other evidence in of record. While he indicated the claimant experienced marked limitations in her ability to perform work activity, he only diagnosed depression and prescribed medication too low to effectively treat the condition he diagnosed. Moreover, his opinion statement provided that the claimant had a documented history of an affective disorder and that her current history of one or more years of inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. This opinion totally ignores the fact the claimant has resided independently for several years. Additionally, based on the testimony of the medical expert, the claimant's prescription medication regimen was too low to be treating a condition as severe as Dr. Smith described. Likewise, even though he opined the claimant required a structured living environment, he also opined the claimant could manage her own funds. This opinion is internally inconsistent. While Dr. Smith may recognize the claimant to be disabled under the standard for the Veterans Administration, the undersigned is not bound by that agency's criteria for disability. Based on the evidence, the claimant is not totally disabled as described in the Social Security Act. The undersigned, therefore, does not accord any weigh[t] to the opinion of the treating psychiatrist.

Kellum argues that the ALJ made no effort to seek any additional information from Kellum's treating physician to clarify the inconsistency between Kellum's diagnosed depression and the prescribed medication regime. Despite the Commissioner's argument that the duty to contact arises only upon inadequate evidence, rather than inconsistent evidence, the regulations provide that "[w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."[30] "The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden."[31] If the ALJ concluded that Dr. Smith's diagnosed depression and prescribed medication regimen for

---

[30] *See* 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1).

[31] *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001)).

that depression was inconsistent, he should have contacted Dr. Smith for clarification of his opinion before rejecting it.[32]

Furthermore, the ALJ noted that Dr. Smith's opinion statement was out of line with other evidence of record. However, other evidence supported Dr. Smith's opinion. The opinions of the consultative examiner, Dr. Lieberman, stated that Kellum had post-traumatic stress disorder and depression. And Dr. Lieberman ultimately opined that Kellum could not work. Although the ALJ found Dr. Lieberman's report to be "comprehensive in scope," the ALJ noted that he did not "interpret [Dr. Lieberman's] opinion to indicate the claimant could not perform any type of work, merely the work she performed in the past." Dr. Lieberman's report, however, does not support this interpretation. The report specifically states "Per [Kellum's] pervasively anxious and fearful state it is unlikely that she would be able to maintain gainful employment." And Dr. Lieberman's finding of depression is consistent with Kellum's treating physician's opinion.

The Veteran's Administration also made a determination on the basis of Kellum's depression and awarded her 70 percent service connected disability. The VA relied upon a physician's examination in which that physician diagnosed Kellum with major depressive disorder with psychotic features and anxiety disorder. The VA also found that Kellum was unemployable. The ALJ stated that he gave the VA determination no weight because the independent medical examiner opined that the VA relied heavily on Kellum's complaints. Although the VA's disability determination is not binding on the ALJ, that determination lends support to Dr. Smith's opinion. In sum, numerous other treating medical sources appear to support Kellum's treating physician's opinion.

---

[32] *Robinson*, 366 F.3d at 1084.

Finally, the ALJ did not specifically state the weight he gave the independent medical examiner's opinion and whether he found that it outweighed the treating physician's opinion, but it appears that the ALJ primarily relied upon Dr. Jonas's testimony.[33] "The general rule is that 'the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. . . . When the treating physician's opinion is supported by medical evidence and is not unacceptable brief and conclusory, it is entitled to more weight on the question of disability than the opinion of a physician who has reviewed the medical evidence, but has never examined the patient."[34] As noted above, several sources that examined Kellum, including Kellum's treating physician, concluded that Kellum suffered from depression. It appears that the independent medical examiner reached the opposite conclusion.

In this case, the ALJ afforded Dr. Smith's opinion no weight primarily due to the perceived inconsistency between Kellum's diagnosis and her prescribed medication regimen. Though the ALJ need not formally and exhaustively review each of the *Krauser* factors concerning the medical opinion of a treating physician, the ALJ should have resolved this inconsistency. In addition, it does not appear that the ALJ considered the other factors which tended to support the treating physician's opinion. Accordingly, the Court remands this matter to the ALJ to seek resolution of the perceived inconsistencies in Dr. Smith's reports and to more fully consider the evidence in light of the *Krauser* factors articulated by the Tenth Circuit.

---

[33] The ALJ stated that his findings were based in "good part" on the independent medical examiner's testimony.

[34] *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983) (quotation marks and citations omitted).

### B. Inadequate Representation of Kellum's RFC to the Vocational Expert

Because the Court concludes that the ALJ failed to resolve the perceived inconsistency between Kellum's treating physician's diagnosis and prescribed medication regimen and failed to adequately set forth the reasons for giving the treating physician's opinion no weight, the Court will not reach the remaining issue raised by Kellum. The ALJ's RFC assessment may be affected by the ALJ's reconsideration of Kellum's treating physician's opinion.

**IT IS ACCORDINGLY ORDERED** this 18th day of December, 2013 that the judgment of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE